CENTRAL ARK. MILK PRODUCERS ASSOCIATION *v.* SMITH.

5-2138                                    335 S. W. 2d 289

Opinion delivered May 16, 1960.

[Rehearing denied June 6, 1960]

*Thompson & Thompson,* for appellant.

*J. E. Simpson,* for appellee.

J. SEABORN HOLT, Associate Justice. Appellee, Willard Smith, brought suit against appellant, Central Arkansas Milk Producers Association (an association of dairy farmers which was organized under the laws of Arkansas for the purpose of collectively selling milk produced by the members thereof), for appellant's alleged failure to purchase appellee's milk truck in accordance with the terms of a previous oral contract, or agreement, between the parties wherein appellant agreed to purchase the truck at its then or above value; and as a further condition of purchase of said truck, appellee, Smith, agreed to assist appellant in obtaining contracts with

people for whom he, Smith, hauled milk to become members of Central Arkansas Milk Producers Association, appellant. Appellee alleged that he fully performed his contract or agreement with appellant, but that appellant had refused to purchase his truck.

From a judgment, on a jury verdict in favor of appellee, in the amount of $600.00 is this appeal. For reversal appellant relies on the following points: "(1) The proof in the case clearly fails to establish that a contract was entered into by the Appellant to purchase the Appellee's truck or any part thereof. (2) If the jury could under the evidence find that there was a contract, the plaintiff completely failed to prove any damage suffered by reason of a breach thereof. (3) Since the most any witness said the truck bed was valued at, at the time of the alleged contract, was Six Hundred Dollars, plaintiff should have been limited to a recovery of Three Hundred Dollars since Defendant in open court at the time of the instructions of the jury offered to pay plaintiff, * * *."

The record reflects that Smith, appellee, was the owner of a milk route in Carroll County and a truck used in connection with collecting milk along the route. Appellee desired to dispose of his milk route and he contracted appellant to induce it to take his milk route over. Several meetings were held between the appellant's representative, Dwight Hull, Smith, and the producers along Smith's milk route. The evidence shows that the general consensus arrived at in these meetings was that the producers would sell their milk to appellant if appellant would purchase the milk truck of appellee. Appellant was equipped for bulk collection of milk and most of the producers had facilities for only canned milk collection and difficulties arose over the collection of the milk. The result was that a number of the producers signed with appellant and the remaining producers found other outlets for their milk.

We think there was substantial evidence adduced that there was a contract or agreement between the parties

for appellant to purchase Smith's truck. Smith testified that appellant agreed to buy his truck: "Mr. Hull (appellant's representative) never did tell me how many dollars he would pay for the truck, said he would pay more than it was worth. He told me to go down here to the garage somewhere or to some of these dealers and find out what it was worth." Kenneth Pinkley testified that he (appellant's representative, Hull) stated that appellant would buy Smith's truck, at its value or above, that the truck was suitable as a bulk tank truck by just putting a tank on Smith's truck. Witness Hoyt Pinkley testified that there was discussion that appellant would buy Smith's truck and equipment. Appellant's representative, Hull, when asked if Smith would be "taken care of," answered, in effect, that appellant would take care of the hauler, that they had never taken a route yet where they hadn't taken care of the hauler and they would buy Smith's truck, — "He told Smith he would reasonably compensate him for the truck, that it was their policy to compensate for the truck when he took their route."

Logan Stafford testified that it was the general impression of the meeting that appellant would buy Willard Smith's truck and equipment. King Hale's testimony was of a corroborative nature. All of the witnesses, in effect, agreed that appellant was to purchase Smith's truck and the only thing that was not mentioned was the price of the truck which was never agreed upon.

As indicated, we hold that the above was substantial evidence that a contract or agreement was entered into between the parties. But, says appellant, "this record is devoid of any meeting of the minds on the price to be paid Williard Smith by appellant for his truck." We do not agree. The rule of law seems to be well settled that where, as here, no definite contract price was agreed upon between the parties, this alone does not invalidate the agreement or contract. The law invokes the standard of reasonableness and the fair value of the property may be shown and recovered where, as here,

the complaining party has duly performed his side of the agreement. "It is by no means uncommon for those who offer or agree to employ others, or to buy goods, to make no statement as to the wages or price to be paid. The law invokes here (as likewise where an agreement is indefinite as to time) the standard of reasonableness. Accordingly the fair value of the services of property is recoverable on the implied in fact contract. * * *", Williston, Contracts, Vol. I, § 41 at p. 115. And, "There is no more settled rule of law applicable to actions based on contracts than that an agreement, in order to be binding, must be sufficiently definite to enable the court to determine its exact meaning and fix exactly the legal liability of the parties. Indefiniteness may relate to the time of performance, the price to be paid, work to be done, property to be transferred, or other miscellaneous stipulations of the agreement. If the contract makes no statement as to the price to be paid, the law invokes the standard of reasonableness, and the fair value of the services or property is recoverable, * * *" *Corthell* v. *Summit Thread Co.,* 132 Me. 94, 167 A. 79, 81, 92 A. L. R. at p. 1394.

Here, as indicated, there was substantial testimony that the price to be paid was the market value or above "what it's worth", indicating that the price to be paid was the market value. Here it appears that the trial court had no testimony before it as to the value of the truck, other than the owner's (Smith) testimony, and he testified that it was worth far more than the jury found it to be worth. It further appears that appellant offered Smith $300.00 for the truck and offered to pay this sum into the registry of the court.

Appellant also contends "that there was no testimony in this record to go to the jury establishing appellee's damages for the breach of the alleged contract." The court gave the following instruction on damages: "* * * you are told that the measure of damages would be the difference in the value of the truck at the time it was supposed to have been purchased by the

defendant and the value at the time it was refused to be purchased, which I believe, under the evidence, is the sum of twenty-one days. The difference in the change of the value of this article during that time. You are told that it would be limited to $600.00 which, testimony shows, was the value of the bed on the truck, as special damages. There is no evidence that the truck changed in value, but there is evidence that the $600.00 was the cost of the milk bed that was on the truck, which he says he couldn't find a sale for, or find any use for." Appellant says, with reference to this instruction, that "the trial court, therefore, decided against appellee's contention that he was entitled to damages by reason of breach of contract to purchase his truck and took that part of the case away from the jury. There has been no appeal from the court's ruling. The only question before this court is the correctness of the instruction of the court and the jury's finding with reference to the milk bed that was on the truck." As we read the above instruction, it, in effect, told the jury that the only issue in the case to consider was the value of the milk bed which has no other use than for hauling milk. There was testimony by the appellee that it was worth $600.00. In other words, the court found that the evidence showed no depreciation of the truck in the twenty-one day period from the date it was supposed to be purchased by appellant and its value twenty-one days later; but the evidence showed that the milk bed had been destroyed as regard to its value. We think the court was justified in giving the above instruction on the record presented.

Finding no error, the judgment is affirmed.

McFADDIN, J., concurs.

ED F. McFADDIN, Associate Justice, concurring. I concur for the purpose of emphasizing: (1) that there was a contract between Campa and Smith; (2) that Smith had performed his part of the contract; and (3) that under such a situation Campa cannot escape liability by

claiming that no price was agreed upon for the bed of the truck.

If the conversations had been executory (*i. e.*, unperformed) on both sides, then I doubt if there would have been a contract. But when Campa accepted Smith's services it thereby became liable to pay a reasonable value therefor, which was the purchase of the truck.