# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 08-1646

_____

| | | |
|---|---|---|
| Data Manufacturing, Inc., | * | |
| a Missouri corporation, | * | |
| | * | |
| Appellant, | * | Appeal from the United States |
| v. | * | District Court for the Eastern |
| | * | District of Missouri. |
| United Parcel Service, Inc., | * | |
| an Ohio corporation, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: October 16, 2008
Filed: March 4, 2009

_____

Before GRUENDER, BEAM, and SHEPHERD, Circuit Judges.

_____

BEAM, Circuit Judge.

Data Manufacturing, Inc. (DMI) appeals the district court's Rule 12(b)(6) dismissal of its lawsuit against United Parcel Service (UPS). We hold that all but one of DMI's claims are preempted by the Federal Aviation Administration Authorization Act of 1994, 49 U.S.C. §14501(c)(1) (FAAAA). Accordingly, we reverse and remand for adjudication of DMI's sole surviving claim–that it did not agree to pay a $10 re-billing fee in its contract with UPS.

## I.    BACKGROUND

DMI manufactures retail gift and debit cards for customers, including First Data Corporation.  First Data required DMI to use UPS as the shipper for any gift cards manufactured for First Data, and First Data initially agreed to pay all shipping charges.  DMI had an open account with UPS and originally UPS would bill DMI weekly and then First Data would reimburse DMI for the amount attributable to shipping First Data's gift cards.  In March 2005, however, DMI began to ship the cards using First Data's account number and the shipping charges were billed directly to First Data.  At some point thereafter, First Data began to reject these UPS third-party billings.  In turn, UPS charged DMI's account for First Data's rejected billings. DMI was not initially aware that First Data was rejecting the charges because the UPS billing statements did not include specific shipment information, but instead merely summarized hundreds of shipments.

DMI eventually learned that UPS was also adding a $10 charge for each billing rejected by First Data and then re-billed by UPS to DMI's account.  This was included on the invoice in a category labeled "chargebacks," and this category also included various other charges.  It did not specifically disclose the $10 per transaction re-billing charges.  DMI did not discover these charges until August 2006.  The re-billing charges, in excess of $350,000, actually exceeded the total cost of the shipments from March 2005 through August 2006 for the First Data gift cards.

DMI sued UPS in Missouri state court for the allegedly wrongful re-billing charges assessed by UPS, asserting claims for breach of contract, fraudulent and negligent misrepresentation, and money had and received.  DMI also sought a declaration that the re-billing charges were void and against public policy.  UPS removed the matter to federal court on the basis of diversity jurisdiction and filed a motion to dismiss, arguing that DMI's claims were pre-empted by the FAAAA.  The district court agreed and dismissed the amended complaint.

## II. DISCUSSION

We review de novo the district court's dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Benton v. Merrill Lynch & Co., Inc., 524 F.3d 866, 870 (8th Cir. 2008). The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007).

In the FAAAA, Congress sought to equalize competition between air and motor carriers of property by uniformly preempting state economic regulation of their activities, but not preempting state safety regulations. Tow Operators Working to Protect Their Right to Operate on the Streets of Kansas City v. City of Kansas City, 338 F.3d 873, 874 (8th Cir. 2003). The relevant preemption provision can be found in 49 U.S.C. §14501(c)(1), which states:

> Except as provided in paragraphs (2) and (3), a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

49 U.S.C. §14501(c)(1). So, if DMI's claims relate to UPS's prices, routes or services and derive from the enactment or enforcement of state law, they are preempted.

We begin with the inquiry into whether the basis for all of DMI's claims, the $10 re-billing charge, relates to a price, route or service of UPS. The Supreme Court has broadly interpreted the phrase "relating to" as encompassing all state laws having any connection with or reference to the carrier's rates, routes or services. Morales v. Trans World Airlines, Inc., 504 U.S. 374, 383-84 (1992) (construing a substantially

similar provision in the Airline Deregulation Act (ADA)).  This means that states cannot inflict their own public policies or regulations on a carrier's operations.  Botz v. Omni Air Int'l, 286 F.3d 488, 495 (8th Cir. 2002).

We find that the $10 charge is part of UPS's "operations" and falls into both the price and service categories.  Certainly shipping is the main component of UPS's business and service, but it is disingenuous to suggest that UPS's billing procedures are not a necessary component of its business operations.  DMI argues that there was no "service" here because the cost of re-assigning each of the numerous rejected billings was de minimus, and did not cost UPS $10 per transaction.  However, regardless of how much it actually cost UPS to re-bill the shipping charges for each transaction, it is certainly part of its pricing and services to do so.  While the work to re-bill may have been de minimus, it was still part of the UPS accounting department's operations to do so.  DMI may be correct when it insists that UPS should have informed DMI that First Data had rejected the billings, but that argument has no effect on whether the $10 re-billing charge was part of UPS's price or service.  All of DMI's claims attack the validity of the $10 re-billing charge, which relates to UPS's price or services.  Accordingly, this element of § 14501(c)(1)'s preemption test is satisfied. We next turn to the question of whether DMI's claims derive from the enactment or enforcement of state law.

DMI argues that its claims sound in the common law of contracts, and therefore pursuant to American Airlines v. Wolens, 513 U.S. 219 (1995), do not derive from the enactment or enforcement of state law.  In Wolens, the Supreme Court carved out an exception to the general preemption statute found in the ADA for strictly "routine" breach of contract claims.  The Wolens plaintiffs sued American Airlines (AA) for fraud and breach of contract[1] in connection with its frequent flyer program, arguing

---

[1]The Wolens plaintiffs also initially sought injunctive relief, which the state court ruled was preempted.  In a footnote, the Court noted that the plaintiffs did not contest the state-court holding that injunctive relief is preempted.  513 U.S. at 225 n.3.

that AA wrongly modified the program, thereby devaluing credits they had already earned. AA argued that the action was preempted by the ADA's preemption clause, which as noted above, reads very much like the FAAAA's preemption clause.[2] The Court held that the fraud action, based on an Illinois consumer fraud statute proscribing among other things fraud, deception and misrepresentation in the conduct of trade or commerce, was preempted. Id. at 227-28. The Court reasoned that such a cause of action "serves as a means to guide and police the marketing practices of the airlines" rather than "simply giv[ing] effect to bargains offered by the airlines and accepted by airline customers." Id. at 228.

The Court found that the contract action, however, was not preempted, holding that the preemption clause could not shield AA from answering for the "alleged breach of its own, self-imposed undertakings." Id. The Court emphasized the distinction between an action based solely on the agreement between the parties, and an action enlarged or enhanced by state laws or policies. Id. at 233.

To determine whether DMI's claims derive from the enactment or enforcement of state law, we start with the assertions in the amended complaint. In Count 1, DMI alleges that it was "implicit" in DMI's contract with UPS that UPS would not charge the unlawful penalty of a $10 re-billing charge, and that DMI did not agree to the charge, which was undisclosed, unenforceable, and void as against public policy. Accordingly, UPS breached the contract and DMI suffered damages for the total amount of the re-billing charges, $366,910. (Appellant's App. at 29). Counts II and IV allege fraudulent and negligent misrepresentation. Count III alleges that because the re-billing charge was an unenforceable penalty, UPS has money in its possession

_____

[2]The Supreme Court recently noted that the preemption clauses in the ADA and FAAAA are identical in scope. Rowe v. New Hampshire Motor Transport Ass'n, 128 S. Ct. 989, 994-95 (2008).

that rightfully belongs to DMI (money had and received). Count V asks the court to declare the fee void as against public policy.

We have no difficulty deciding that Counts II through V derive from the enforcement of Missouri state law. Like the Illinois consumer fraud statute at issue in Wolens, these four claims all depend upon and are associated with the state of Missouri, through its common law, guiding and policing UPS's economic policies. Wolens, 513 U.S. at 228. Indeed, the Wolens Court specifically noted that the preemption provisions precluded states from "impos[ing] their own public policies or theories of competition or regulation on the operations" of a carrier. Id. at 229 n.5 (quotations omitted). Counts II through V all arise outside of the four corners of the contract between UPS and DMI, and are claims that are enlarged or enhanced, and indeed, are dependent upon, Missouri state laws and policies. Accordingly, these claims are preempted.

The breach of contract claim is more problematic, as it is more analogous to the cause of action the Supreme Court held was not preempted in Wolens. In Wolens, the contractual agreement consisted of the original AA frequent flyer program which the plaintiffs signed up for, and then sued to enforce when AA changed the program to include blackout dates and capacity controls. The Wolens plaintiffs conceded that AA had the right to change the terms of the frequent flyer program, but in that case, challenged the retroactive application of those changes. Id. at 225. The Wolens Court determined that adjudication of the simple issue of whether AA could retroactively apply its new frequent flyer rules was not preempted, because this would constitute only "court enforcement of contract terms set by the parties themselves." Id. at 222.

In Count I, DMI challenges the $10 re-billing fee, arguing that it did not agree to pay the fee, and it was a penalty, unlawful, and void as against public policy. Despite DMI's artful arguments to the contrary, we fail to understand how most of this particular cause of action does not require a resort to the laws of Missouri for its

adjudication. The determination of whether such a fee is a penalty, unlawful and against Missouri's public policy, by definition, requires the court to apply Missouri law. E.g., McPherson Redevelopment Corp. v. Shelton, 807 S.W.2d 203, 206-07 (Mo. Ct. App. 1991) (analyzing whether attorney fee provision in a contract amounted to a penalty, was void as against public policy, or unconscionable).

DMI's assertion that the re-billing fee was not actually part of its contract with UPS is more compelling. UPS argues that the re-billing charge is part of its standard policy when shippers use third-party billings. DMI asserts that it never agreed to such a fee. Despite UPS's arguments to the contrary, DMI did make this assertion in paragraph 24 of its Amended Complaint. Under Wolens, the issue of whether DMI agreed to the fee as part of its contract with UPS reads to us like a four-corners claim solely between the parties that does not derive from the enactment or enforcement of state law. Accordingly, we find that although most of the claims in Count I are preempted, DMI can proceed with its contract claim that it did not agree to the $10 re-billing charge.[3]

DMI argues that if we find that its state law claims are preempted, we "must fashion rules of Federal common law to govern DMI's claims." Appellant's Brief at 27. We do not read the Supreme Court's federal common law precedents as expansively as DMI. E.g., Atherton v. FDIC, 519 U.S. 213, 218 (1997) (holding that situations calling for the creation of federal common law are rare). Indeed, Wolens addressed the federal common law argument, noting that it was not "plausible that Congress meant to channel into federal courts the business of resolving, pursuant to judicially fashioned federal common law" claims related to carrier prices, routes or

---

[3]DMI cannot argue that the fee is too unconscionably high, a penalty, or void, but it can proceed with its claim that it did not agree to the fee at all. Adjudication of this claim will likely be a matter of simply entering the contract documents into the record before the district court.

services. 513 U.S. at 232. And, we note that one of DMI's claims survived the preemption analysis. Accordingly, we reject DMI's federal common law arguments.

Finally, DMI asserts that the district court erred in dismissing Count IV of the amended complaint because it actually states a cause of action under 49 U.S.C. § 13708. This statute requires a carrier to disclose its actual rates and prohibits carriers from disseminating false or misleading information about rates. DMI did not mention this statute in Count IV or anywhere else in its amended complaint, nor did it advance this argument to the district court. DMI further concedes on appeal that it can find "no precedent finding a private cause of action under § 13708." Appellant's Brief at 31 n.7. Unless there are exceptional circumstances, we do not consider arguments raised the first time on appeal. McBurney v. Stew Hansen's Dodge City, Inc., 398 F.3d 998, 1002 (8th Cir. 2005). We find no such circumstances here.

## III.   CONCLUSION

We affirm the district court in part, but reverse and remand for proceedings consistent with this opinion.

_____