MURDOCK, Justice
(dissenting).

Preemption

As the United States Supreme Court stated just last year, “ ‘[i]n all pre-emption cases, and particularly in those in which Congress has “legislated ... in a field which the States have traditionally occupied,” ... we “start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.” ’ ” Wyeth v. Levine, — U.S. -, -, 129 S.Ct. 1187, 1194-95, 173 L.Ed.2d 51 (2009). I cannot agree that 49 U.S.C. § 14501 reflects a “clear and manifest purpose” by Congress to preempt state common-law and statutory tort claims for the wrongful disposition of a towed vehicle. The Federal Aviation Administration Authorization Act (“the Act”), of which § 14501 is a part, is devoid of any provisions addressing the obligations or duties of tow-truck operators with respect to efforts to determine the rightful owners of towed vehicles, to notify those owners of the whereabouts of their vehicles, or to provide those owners with reasonable opportunities to retrieve their vehicles before selling or otherwise disposing of them.
“The principles governing the circumstances under which preemption may arise ... may be summarized as follows: first, when acting within constitutional limits, Congress has expressly stated an intention to preempt there is preemption; second, though it has not expressly preempted a field or an identifiable portion thereof, preemption exists if Congress has adopted a ‘scheme of federal regulation ... sufficiently comprehensive to make reasonable the inference that Congress left no room ... for supplementary state regulation;’ and finally, ‘where the field is one in which “the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject,” ’ or ‘when “compliance with both federal and state regulation is a physical impossibility,” ’ there will be preemption. [Hillsborough County v. Automated Med. Labs., 471 U.S. 707, 713 (1985) ]. In applying these prinei- *461 pies, though, it is important to bear in mind that ‘where the state’s police power is involved, preemption will not be presumed.’ Chrysler Corp. v. Rhodes, 416 F.2d 319, 324, n. 8 (1st Cir.1969).”
Specialized Carriers & Rigging Ass’n v. Virginia, 795 F.2d 1152, 1155 (4th Cir. 1986) (emphasis added). See Gade v. National Solid Wastes Mgmt. Ass’n, 505 U.S. 88, 98, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992)(reiterating the same principles).
In § 14501, Congress expressed its intention to legislate and to preempt state regulation regarding the “price, route, and service” of motor carriers of property. In so doing, Congress expressed its concern with what the United States Supreme Court terms “economic regulation” of tow-truck operators. City of Columbus v. Ours Garage & Wrecker Serv., Inc., 536 U.S. 424, 439-41, 122 S.Ct. 2226, 153 L.Ed.2d 430 (2002) (explaining that “the problem to which the congressional conferees attended was ‘[s]tate economic regulation ’ ” and that “Congress’ clear purpose in § 14501(c)(2)(A) is to ensure that its preemption of States’ economic authority over motor carriers of property, § 14501(c)(1), ‘not restrict’ the preexisting and, traditional state police power over safety” (emphasis added)).[7] The Act does not contain any provision that even begins to address the type of tortious conduct by the towing company alleged in this case.[8]
The main opinion relies primarily upon the decision of the United States Court of Appeals for the Tenth Circuit in Kelley v. United States, 69 F.3d 1503 (10th Cir. 1995). Kelley, however, only rejects a general challenge to the constitutionality of the Act brought by two state attorneys general, the public service commissions of two states, and two other entities with no apparent connection with the tow-truck industry. Kelley makes no mention of the tow-truck industry.[9] Concomitantly, Kel *462 ley unquestionably does not stand for the proposition that state statutory and common-law claims in the nature of conversion, negligence, and fraud alleging the wrongful sale of a towed vehicle must be considered preempted lest they impinge upon the “economic regulation” of tow-truck operators intended by Congress.
On the other hand, some federal and state courts that have considered the towing industry, and in particular the preservation or storage of a vehicle after it has been towed, have held that state causes of action relating to storage and disposition of towed vehicles are not preempted by the Act. See, e.g., Rhode Island Public Towing Ass’n, Inc. v. State, (No. CV-96-454 ML, Feb. 28, 1997) (D.R.I.1997) (not published in F.Supp.) (concluding “that the regulation of storage rates is not sufficiently related to a price, route, or service of a tow truck” and therefore the state regulation of those rates was not preempted by § 14501(c) (emphasis added)); CPF Agency Corp. v. Sevel’s 24. Hour Towing Serv., 132 Cal.App.4th 1034, 34 Cal.Rptr.3d 120 (2005) (holding that state statute imposing limitations on lien-sale-preparation fees had only a remote relationship to towing company’s “price, route, or service” and thus did not come within the purview of the preemption provision of § 14501(c)). See also Ware v. Tow Pro Custom Towing & Hauling, Inc., 289 Fed.Appx. 852 (6th Cir.2008) (not selected for publication in the Federal Reporter) (Griffin, J., concurring in part and dissenting in part).
Congress did not undertake in the Act to “regulate” the tortious conduct of tow-truck operators, at least with respect to the wrongful disposition of towed vehicles. Again, the federal statutory scheme contains no provision granting the owner of a wrongfully disposed of vehicle any remedy at all for such tortious conduct. I therefore cannot conclude that 49 U.S.C. § 14501 reflects the requisite “clear and manifest purpose” by Congress to preempt traditional state tort-law claims in this area, i.e., statutory and common-law claims in the nature of negligence, conversion, fraud, and suppression relating to the wrongful sale of a towed vehicle by a tow-truck operator who allegedly has not made reasonable efforts to determine the rightful owner of the vehicle, to notify that owner of the whereabouts of his or her vehicle, and to provide that owner a reasonable opportunity to retrieve his or her vehicle before selling it to a third party.

Jurisdiction

The trial court based its judgment of dismissal in this case on the ground that the purported federal preemption of state claims, in its view, deprived it of subject-matter jurisdiction. The main opinion initially appears to base its affirmance of the trial court’s judgment on the same ground, beginning its analysis by “ ‘set[ting] out the standard of review of a ruling on a motion to dismiss for lack of subject-matter jurisdiction.’” 44 So.3d at 449-50 (quoting Pontius v. State Farm Mut. Auto. Ins. Co., 915 So.2d 557, 563 (Ala. 2005) (emphasis added)). At its end, how *463 ever, the main opinion includes a footnote asserting that it does not undertake to address the issue of subject-matter jurisdiction because Debra Weatherspoon makes no argument on appeal concerning this issue. Because of the fundamental nature of the issue of subject-matter jurisdiction, I will address it, but only briefly, because the main opinion does appear in the final analysis to disavow the supposed lack of subject-matter jurisdiction as the basis for its affirmance of the trial court’s dismissal.
Specifically, I simply note that, even if we could glean from the text of § 14501(c) a congressional intent to preempt state-law tort claims of the nature at issue in this case, the result would not be to deprive Alabama state courts of jurisdiction to address the viability of those claims, as the trial court held. Instead, the result would be the failure of the complaint to state a viable claim because the state-law claims would have simply been vitiated by the federal Act. This form of preemption is referred to by courts and commentators as “choice-of-law” preemption. It results not in a defect of the subject-matter jurisdiction of the state court, but rather a defect in the plaintiff’s state-law cause of action that would warrant a dismissal under Rule 12(b)(6), Ala. R. Civ. P., for failure to state a viable claim. It stands in contrast to the “choice-of-forum” preemption found to exist in International Longshoremen’s Ass’n v. Davis, 476 U.S. 380, 106 S.Ct. 1904, 90 L.Ed.2d 389 (1986) (noting among other things that choice-of-forum preemption does not apply to preemption claims generally). See also, e.g., Gonzales v. Surgidev Corp., 120 N.M. 133, 138-39, 899 P.2d 576, 581-82 (1995) (expositing Davis and explaining well the bases for “choice-of-law” preemption and “choice-of-forum” preemption as identified in Davis and how the former leads not to a deprivation of subject-matter jurisdiction in the state court, but to a waivable failure to state a viable cause of action); Cordis Corp. v. O’Shea, 24 So.3d 576 (Fla.App.2009) (applying Davis and recognizing the difference between choice-of-forum preemption and choice-of-law preemption).

Conclusion

I disagree with the conclusion in the main opinion that § 14501(c) preempts Alabama’s common-law and statutory claims in the nature of conversion, negligence, fraud, and suppression that would otherwise be available when a tow-truck operator wrongfully disposes of a towed vehicle without first making reasonable efforts to discern, locate, and notify the owner of the towed vehicle and give that owner a reasonable chance to retrieve his or her vehicle. Therefore, I respectfully dissent.

.I cannot conclude that the United States Supreme Court, in its decision in Rowe v. New Hampshire Motor Transport Ass'n, 552 U.S. 364, 128 S.Ct. 989, 169 L.Ed.2d 933 (2008), intended to distance itself in the manner suggested by the main opinion from the notion that Congress was focused on the economic regulation of motor carriers of property in the enactment of § 14501(c) — a proposition that the Court clearly had embraced just four years earlier in City of Columbus — and certainly not to the extent of ”reject[ing] an argument similar to that made by th[is] dissent.” See 44 So.3d at 450 n. 2. What the Rowe Court did was simply to reject the State of Maine’s “argument for an implied 'public health’ or 'tobacco’ exception to federal preemption,” 552 U.S. at 374, 128 S.Ct. at 997, stating in the process that "it is frequently difficult to distinguish between a State’s 'economic’-related and 'health’-related motivations.” Id. The Rowe Court went on to reaffirm, however, that "Congress' overarching goal [was] helping assure transportation rates, routes, and services that reflect ‘maximum reliance on competitive market forces,’ thereby stimulating 'efficiency, innovation, and low prices,’ as well as 'variety' and 'quality.’ " Rowe, 552 U.S. at 371, 128 S.Ct. at 995 (quoting Morales v. Trans World Airlines, Inc., 504 U.S. 374, 378, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992)). The latter statement does not appear to be a repudiation of the notion that, in enacting § 14501, Congress's focus was the economic regulation of carriers.

. To be clear, I do not reach the issue whether the Act is unconstitutional, i.e., that it is "irrational for purposes of Commerce Clause analysis.” See discussion in note 4 of the main opinion, 44 So.3d at 457. My point is merely that Congress's omission from the federal statutory scheme of any federally created remedy for tortious conduct of a type that clearly is in need of a remedy and that, traditionally, has been viewed as falling within state "police power” as to matters affecting the safety, health, and welfare of the citizens of a state — and as such has traditionally been governed by state common law — is a strong indicator that Congress simply did not intend for federal law to preempt state law in this specific regard.

. This is true as well of the next two cases cited in the main opinion regarding preemption, Data Manufacturing, Inc. v. United Par *462 cel Service, Inc., 557 F.3d 849 (8th Cir.2009), and Deerskin Trading Post, Inc. v. United Parcel Service of America, Inc., 972 F.Supp. 665 (N.D.Ga.1997). In A.J.’s Wrecker Service of Dallas, Inc. v. Salazar, 165 S.W.3d 444 (Tex. App.2005), also cited by the main opinion, the claims of "trespass” and "conversion” held to be preempted were based on the actual "service” of towing the vehicle — allegedly without "probable cause” to consider it unlawfully parked — as well as the towing company’s ensuing refusal to return the vehicle until forced to do so by a court order. 165 S.W.3d at 447. The case did not involve the wrongful disposition of a vehicle to a third party by a towing company without ever undertaking appropriate efforts to determine or to locate the owner of the vehicle or to notify the owner of the vehicle as to its whereabouts before disposing of it, as does the present case.