# United States Court of Appeals

## For the Eighth Circuit

_____

No. 17-2554

_____

James W. Ferrell, Individually and as Class Representative

*Plaintiff - Appellant*

v.

Air EVAC EMS, Inc.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Pine Bluff

_____

Submitted: April 11, 2018
Filed: August 16, 2018

_____

Before SMITH, Chief Judge, WOLLMAN and LOKEN, Circuit Judges.

_____

LOKEN, Circuit Judge.

James Ferrell checked into the emergency room at a hospital in Warren, Arkansas, experiencing chest pain. Staff arranged for Air EVAC EMS, Inc. (Air EVAC), an air-ambulance operator, to transport him by helicopter to another hospital forty-one miles away. A few months after the transport, Air EVAC sent Ferrell a bill for $30,083.26. His insurer, Arkansas Blue Cross, paid $1000.00, leaving him owing a balance of $29,083.26. Ferrell brought this putative class action against Air EVAC

asserting three claims for relief under Arkansas law: (i) a declaratory judgment that any contract between Air EVAC and class members is unenforceable because it lacks an essential price term; (ii) damages under the Arkansas Deceptive Trade Practices Act for concealing or omitting disclosure of its price until it completes air-ambulance transport; and (iii) a declaratory judgment that Air EVAC may not seek restitution against class members because it lacks clean hands. Air EVAC removed the action to the Eastern District of Arkansas and moved to dismiss. The district court[1] dismissed all claims as preempted by the express preemption provision in the Airline Deregulation Act (ADA), 49 U.S.C. § 41713(b)(1). We affirm on a narrower basis than Air EVAC urges on appeal.

## I. The Preemption Landscape.

Before Congress enacted the ADA in 1978, the Federal Aviation Act (FAA) authorized the Civil Aeronautics Board to regulate air carriers' fares and trade practices; a savings provision preserved preexisting statutory and common law remedies. Morales v. Trans World Airlines, Inc., 504 U.S. 374, 378 (1992). Congress shifted course in the ADA, seeking "to promote 'efficiency, innovation, and low prices' in the airline industry through 'maximum reliance on competitive market forces and on actual and potential competition.'" Nw., Inc. v. Ginsberg, 134 S. Ct. 1422, 1428 (2014), quoting 49 U.S.C. §§ 40101(a)(6), 12(A). To this end, the ADA included a broad preemption provision:

> Except as provided in this subsection, a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.

---

[1]The Honorable D.P. Marshall Jr., United States District Judge for the Eastern District of Arkansas.

49 U.S.C. § 41713(b)(1). A primary purpose was to "ensure that the States would not undo federal deregulation with regulation of their own." Morales, 504 U.S. at 378. In place of stifling federal and state price, route, and service regulation, Congress granted the Department of Transportation (DOT) authority to police "unfair or deceptive practice[s] or . . . unfair method[s] of competition," 49 U.S.C. § 41712(a), terms that have a long federal history in statutes such as Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45.

The Supreme Court has interpreted and applied the ADA's preemption provision in three cases. In Morales, commercial airlines sued to enjoin state attorneys general from enforcing guidelines regulating airlines' fare advertising. 504 U.S. at 379-80. The guidelines required "clear and conspicuous disclosure" of the terms on which particular fares were offered. Analogizing the ADA preemption provision to the "similarly worded" and "deliberately expansive" provision in the Employee Retirement Income Security Act, the Court held that "[s]tate enforcement actions having a connection with or reference to airline 'rates, routes, or services' are preempted." Id. at 383-84 (quotation omitted). The Court observed: "One cannot avoid the conclusion that [the advertising restrictions in] the guidelines 'relate to' airline rates. . . . [B]eyond the guidelines' express reference to fares, it is clear as an economic matter that state restrictions on fare advertising have the forbidden significant effect upon fares." Id. at 388.

In American Airlines, Inc. v. Wolens, 513 U.S. 219 (1995), participants in American Airlines' frequent flyer program brought a class action alleging that the airline violated the Illinois Consumer Fraud and Deceptive Business Practices Act and breached its contract with participants by modifying the program to devalue mileage credits participants had accumulated. Id. at 224-25. Applying Morales, the Court held that the ADA preempted plaintiffs' claim under the Illinois consumer fraud statute. "This Illinois law, in fact, is paradigmatic of the consumer protection legislation underpinning the NAAG guidelines" at issue in Morales. Id. at 227.

However, the Court concluded, the ADA's preemption clause did not shelter American Airlines from plaintiffs' breach of contract claims:

> The ADA's preemption clause . . . read together with the FAA's saving clause, stops States from imposing their own substantive standards with respect to rates, routes, or services, but not from affording relief to a party who claims and proves that an airline dishonored a term the airline itself stipulated. This distinction between what the State dictates and what the airline itself undertakes confines courts, in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement.

513 U.S. at 232-33. In explaining this exception to ADA preemption, the Court noted that Congress did not authorize DOT to establish an administrative process for adjudicating private contract disputes. "Nor is it plausible that Congress meant to channel into federal courts the business of resolving, pursuant to judicially fashioned federal common law, the range of contract claims relating to airline rates, routes, or services." Id. at 232.

Most recently, in Ginsberg, class action plaintiffs alleged that Northwest Airlines violated its duty of good faith and fair dealing when it revoked their membership in its frequent flyer program. 134 S. Ct. at 1426-27. The Court held that the preemption of "provision[s] having the force and effect of law" includes common law rules when they embody, like statutes and regulations, "binding standards of conduct that operate irrespective of any private agreement." Id. at 1429, quoting 49 U.S.C. § 41713(b)(1) and Wolens, 513 U.S. at 229 n.5. Because plaintiffs' claim related to Northwest's rates and services, the Court defined the "central issue" in the case as being whether the "implied covenant claim is based on a state-imposed obligation or simply one that the parties voluntarily undertook." Id. at 1430-31. The unanimous Court concluded that the implied covenant at issue reflected a state-imposed obligation under Minnesota law and was therefore preempted. Id. at 1432-

-4-

33. However, the Court noted, plaintiffs had voluntarily dismissed a separate breach of contract claim after the district court ruled that Northwest had unfettered discretion to terminate membership in its frequent flyer program. If plaintiffs had appealed that ruling, an argument that the contract did not give Northwest unfettered discretion would not have been preempted under Wolens. Id. at 1433.

## II. The Claims at Issue.

The district court dismissed Ferrell's three claims, explaining that they not only "relate to" an air carrier's prices but are "in the heartland of price." The court concluded that the fairness of Ferrell's transaction with Air EVAC and the reasonableness of Air EVAC's price are governed by federal law. We review *de novo* whether the ADA expressly preempts these claims. See Watson v. Air Methods Corp., 870 F.3d 812, 815 (8th Cir. 2017) (en banc). We base our analysis primarily on the plain meaning of the statute defining "the ADA's pre-emptive reach," as interpreted by the Supreme Court in Ginsberg, 134 S. Ct. at 1428, Morales, and Wolens. As the Court did in those cases, we separately analyze each claim.

**A.** In our view, preemption applies most obviously to Ferrell's Second Cause of Action, which alleges:

> 38. Defendant's concealment, suppression or omission of the price it will charge a patient until after the transport of the patient is done, as well as Defendant's concealment, suppression or omission of what the patient's health insurance will pay on Defendant's air ambulance charges, or whether the patients will be subject to a balance billing over insurance, constitute violations of the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101, *et seq.*, including, without limitation, Ark. Code Ann. §§ 4-88-107, -108.

This claim seeks to impose a state statutory price disclosure obligation beyond the scope of any agreement Air EVAC had with Ferrell. It obviously relates to Air

EVAC's price and service. In both <u>Morales</u> and <u>Wolens</u>, the Supreme Court rejected similar attempts to use state consumer protection laws to regulate air carrier prices and services (noting in <u>Morales</u> that air carriers hardly have "*carte blanche* to lie to and deceive consumers" given the DOT's oversight authority). 504 U.S. at 387-88, 390-91; 513 U.S. at 227-28.

Acknowledging that common law fraud and statutory consumer protection claims were preempted in <u>Morales</u> and <u>Wolens</u>,[2] Ferrell argues that these decisions should not apply to the unique air-ambulance market. He asserts that, because air-ambulance providers do not face meaningful price competition and patients often do not control whether to be transported by an air ambulance, applying the ADA to these fraud claims would entrench an anti-competitive market, not further the ADA's purpose of promoting efficiency and competition. But where a federal statute contains an express preemption provision, we "focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." <u>Puerto Rico v. Franklin Cal. Tax-Free Tr.</u>, 136 S. Ct. 1938, 1946 (2016) (quotation omitted). Here, the ADA preempts state law "related to a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b)(1). An air-ambulance operator such as Air EVAC is an "air carrier." <u>See</u> 49 U.S.C. § 40102(a)(2); <u>Watson</u>, 870 F.3d at 814; <u>Schneberger v. Air EVAC EMS, Inc.</u>, No. Civ-16-843-R, 2017 WL 1026012, at *2 & n.3 (W.D. Okla. Mar. 15, 2017) (collecting authorities).

"[W]hen the statute's language is plain, our inquiry into preemption both begins and ends with the language of the statute itself." <u>EagleMed LLC v. Cox</u>, 868 F.3d 893, 903 (10th Cir. 2017). We may not refuse to apply ADA preemption merely

---

[2]Both the expressly pleaded Arkansas Deceptive Trade Practices Act claim and a common law fraud claim Ferrell presses on appeal seek damages for an alleged breach of Air EVAC's duty to disclose its prices. Both are preempted. <u>See</u> <u>Musson Theatrical, Inc. v. Fed. Express Corp.</u>, 89 F.3d 1244, 1251 (6th Cir. 1996).

-6-

because we do not believe it would be sound public policy to enforce the statute Congress enacted. Ferrell's Second Cause of Action is preempted.

**B.** For similar reasons, we conclude the ADA preempts Ferrell's Third Cause of Action, which alleges:

> 41. Since Defendant attempts to gouge patients with its exorbitant charges through concealment, suppression and omission of information about those charges from the patients until after they have been transported, Defendant does not have the good faith, clean hands, and reasonable terms necessary to be eligible for relief under implied contract, unjust enrichment, *quantum meruit*, or other restitutionary remedy, and this Court should so declare pursuant to the Arkansas Declaratory Judgment Act, Ark. Code Ann. § 16-111-101, *et seq*., and other applicable law.

In <u>Ginsberg</u>, the Supreme Court held that state common law doctrines such as good faith that relate to air carrier prices, routes, or services are preempted when they are employed "to ensure that a party does not violate community standards of decency, fairness, or reasonableness." 134 S. Ct. at 1431 (quotation omitted). Determining whether Air EVAC lacks the "clean hands" necessary to obtain equitable relief such as restitution under Arkansas law because it "attempts to gouge patients with its exorbitant charges" would require determining whether Air EVAC's pricing practices are "unconscientious or unjust." <u>Merchs. & Planters Bank & Tr. Co. v. Massey</u>, 790 S.W.2d 889, 891 (Ark. 1990). It is hard to imagine a state law claim more at odds with the congressional intent "[t]o ensure that the States would not undo federal deregulation with regulation of their own." <u>Morales</u>, 504 U.S. at 378. Ferrell's Third Cause of Action, *as pleaded*, is preempted.

**C.** Ferrell's First Cause of Action presents the most interesting preemption issue. After setting forth factual background and class allegations in great detail, the First Cause of Action alleges:

> 29. Because Defendant does not supply pricing information for its air ambulance transport services to Plaintiff . . . before providing those services, any agreement or contract to pay for such transport is not valid or enforceable for want of the essential contract term of price, and this Court should so declare pursuant to the Arkansas Declaratory Judgment Act, Ark. Code Ann. § 16-111-101, *et seq*., and other applicable law.

> 30. Further, Plaintiff . . . had no agreement with Defendant as to the price to be charged . . . [nor] any agreement providing a mechanism for objectively determining the price to be charged . . . [so] there can be no valid contract upon which Defendant might hold Plaintiff . . . liable for Defendant's after-the-fact egregious charges . . . .

In support of its motion to dismiss, Air EVAC submitted an Ambulance Billing Authorization Form dated November 14, the day Ferrell was provided air-ambulance transport services, and purporting to be signed by Ferrell and a witness. The Form recites that the patient acknowledges the services "was [sic] actually received," authorizes the services "as being medically necessary," assigns to Air EVAC any third party payments for the services, and "agrees that the patient is financially responsible for, and obligated to pay, the amount charged by [Air EVAC] for the medical services, including any amount that is not paid by any third-party payor."[3]

---

[3]We may consider the Form at the 12(b)(6) stage because it is "necessarily embraced" by Ferrell's complaint, which denies the existence of an enforceable contract. See Enervations, Inc. v. Minn. Mining & Mfg. Co., 380 F.3d 1066, 1069 (8th Cir. 2004) (quotation omitted). However, we do not address whether the Form constitutes a contract enforceable by Air EVAC against Ferrell.

Ferrell seeks a declaration that no express or implied contract came into effect because there was no mutual assent on "the amount of the price." He rejects the price term set forth in the Authorization Form -- that he will pay what Air EVAC charges -- because it does not state the price or provide an objective pricing mechanism. He argues the First Cause of Action falls within the preemption exception recognized in Wolens because it relies on a basic principle of contract law -- there must be a meeting of the minds on all essential terms for a contract to be enforceable. Air EVAC responds that the Wolens exception "saves only contract-law rules aimed at discerning and enforcing the parties' bargain." But Air EVAC acknowledges that "courts have recognized that it is proper to apply ordinary principles of contract law to ascertain whether there was a binding agreement between the parties," citing Lyn-Lea Travel Corp. v. American Airlines, Inc., 283 F.3d 282, 289-90 (5th Cir.), cert. denied, 537 U.S. 1044 (2002).

It is well settled in Arkansas that an indefinite price term or even no price term does not necessarily render a contract unenforceable. See, e.g., Central Ark. Milk Producers Ass'n v. Smith, 335 S.W.2d 289, 290-91 (Ark. 1960). Although dressed in the language of contracts, Ferrell's First Cause of Action, *as pleaded*, asserts that, under Arkansas law, air-ambulance operators have no enforceable contract unless they disclose the actual price they will charge before transporting a patient, or the precise formula that will be used to determine that price. This is asserted on a class-wide basis, independent of the relationship between an air-ambulance operator and a particular patient. This is not a contract-based claim. Like the preempted fraud claims in the Second Cause of Action, this claim asserts a price-disclosure rule under Arkansas law that would apply uniquely and across-the-board to the providers of air-ambulance services operating as federally regulated air carriers. The rule would impose a common-law standard of conduct from which Air EVAC may not free itself. It is therefore a preempted state-imposed obligation. See Ginsberg, 134 S. Ct. at 1432.

-9-

For these reasons, we conclude that Ferrell's declaratory judgment claims, like his fraud claims, are ADA-preempted. A judgment declaring that Air EVAC has no claim for breach of contract, and no right to recover for services it actually provided under any equitable theory, because it did not disclose its pricing term before providing the services, is clearly preempted under the ADA's express preemption provision as construed in Morales, Wolens, and Ginsberg.

Ferrell's reply brief posits that, if his claims are held to be ADA-preempted, the price for air-ambulance services will be set unilaterally by the air-ambulance provider because the DOT does not provide patients an administrative remedy. But this assumes that, if Ferrell's across-the-board class action claims are preempted, then Air EVAC is entitled to recover, as it has argued, the price stated in its Billing Authorization Form -- "the amount charged" -- free of contract law defenses or interference. Both Ferrell's assumption and Air EVAC's assertion are unsound. Recall that, in Wolens, the Supreme Court in explaining the contract-based exception to ADA preemption stated that the ADA did not authorize DOT to adjudicate private contract disputes, and did not "channel into federal courts *the business of resolving*, pursuant to judicially fashioned federal common law, the range of *contract claims relating to airline rates, routes or services*." 513 U.S. at 232. So the question becomes, in this federally deregulated market, what right does Air EVAC have to recover payment for services provided to a patient who refuses to pay?

Three circuit court opinions shed important light on this question. In Data Manufacturing, Inc. v. United Parcel Service, Inc., 557 F.3d 849, 851 (8th Cir. 2009), we applied the nearly identical preemption provision in the Federal Aviation Administration Authorization Act to a claim that UPS had wrongfully assessed a recurring charge on DMI's shipment invoices over an extended period. But we partially reversed the dismissal of the plaintiff's complaint as entirely preempted: "DMI cannot argue that the fee is too unconscionably high, a penalty, or void, but it can proceed with its claim that it did not agree to the fee at all." Id. at 854 n.3. In

Lyn-Lea Travel Corp., after American Airlines announced a policy that significantly reduced commissions paid to travel agencies, the plaintiff travel agency refused to pay American amounts due under a computer lease agreement and sued American asserting various claims. American asserted a breach of contract counterclaim to recover the unpaid lease payments; plaintiff asserted a fraudulent-inducement defense. 283 F.3d at 284-285. The Fifth Circuit held the defense was not ADA-preempted:

> When pleaded as a defense to a contract, fraudulent inducement is related to the fundamental issue in contract actions: is there an enforceable agreement? A fraudulently induced party has not assented to an agreement because the fraudulent conduct precludes the requisite mutual assent. . . . The Court reasoned in Wolens that because contract law is, at its "core," uniform and non-diverse, there is little risk of inconsistent state adjudication of contractual obligations. Fraudulent inducement is among those core concepts as it relates to the validity of mutual assent. The defense does not reflect a state policy seeking to expand or enlarge the parties' agreement.

Id. at 289-90 (citations omitted). Similarly, in United Airlines, Inc. v. Mesa Airlines, Inc., the Seventh Circuit ruled: "public bodies must enforce rules against force and fraud. When all a state does is use these rules to determine whether agreement was reached, or whether instead one party acted under duress, it transgresses no federal rule." 219 F.3d 605, 609-10 (7th Cir.), cert. denied, 531 U.S. 1036 (2000).

If Ferrell does not pay the amount charged, Air EVAC obviously can bring a breach of contract claim to recover that amount. See Bailey v. Rocky Mountain Holdings, LLC, 889 F.3d 1259, 1268 (11th Cir. 2018). Ferrell can assert in defense that he did not agree to pay that amount, and no enforceable contract was breached. If that defense prevails, Air EVAC can assert an equitable claim to recover for the services it provided. If there is no contract, the common law typically provides that a provider may recover the fair value or reasonable value of the services provided.

-11-

What law applies in resolving these issues? No federal or unpreempted state law authorizes an agency to determine Air EVAC's "just and reasonable" rates. Federal law *may* apply to the contract action, but <u>Wolens</u> declared that federal common law will not decide what is a reasonable charge for air-ambulance services. Absent further federal legislation, it seems obvious that a state or federal court asked to determine these contract and restitution issues will necessarily look to governing principles of state law. This is not contrary to the marketplace principles adopted in the ADA. It is the way disputes between private contracting parties are decided in a deregulated marketplace. Thus, the determination that Ferrell's class action declaratory judgment claims are preempted *as pleaded* does not leave air-ambulance patients without potential, unpreempted judicial remedies under <u>Wolens</u> and <u>Ginsberg</u>.

The judgment of the district court is affirmed.

_____