# IN THE SUPREME COURT OF TEXAS

No. 18-0216

TEXAS MUTUAL INSURANCE COMPANY, HARTFORD UNDERWRITERS INSURANCE COMPANY, TASB RISK MANAGEMENT FUND, TRANSPORTATION INSURANCE COMPANY, TRUCK INSURANCE EXCHANGE, TWIN CITY FIRE INSURANCE COMPANY, VALLEY FORGE INSURANCE COMPANY, ET AL., PETITIONERS,

V.

PHI AIR MEDICAL, LLC, RESPONDENT

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS

**Argued February 25, 2020**

JUSTICE BUSBY delivered the opinion of the Court, in which JUSTICE GUZMAN, JUSTICE LEHRMANN, JUSTICE BOYD, JUSTICE DEVINE, and JUSTICE BLACKLOCK joined.

JUSTICE BLAND filed a concurring opinion, in which JUSTICE LEHRMANN, JUSTICE BOYD, and JUSTICE BLACKLOCK joined.

JUSTICE GREEN filed a dissenting opinion, in which CHIEF JUSTICE HECHT joined.

This is a case about federalism. When joining our Union, each State retained fundamental aspects of its sovereignty. This sovereignty includes the police power to provide a compensation system for injured workers. Although the Federal Government can preempt a State's exercise of sovereignty by enacting an inconsistent federal law on a subject within its constitutionally enumerated powers, it has no power to order that State to regulate the subject in a particular way.

The questions presented here include (1) whether Texas's exercise of its police power to require that private insurance companies reimburse the fair and reasonable medical expenses of injured workers is preempted by a federal law deregulating aviation; and, if so, (2) whether that federal law requires Texas to mandate reimbursement of more than a fair and reasonable amount for air ambulance services.

We answer both questions no. As to the first, because Texas's general reimbursement standards do not refer expressly to air ambulance providers like respondent PHI, they are preempted by the federal Airline Deregulation Act (ADA) only if they have a "forbidden significant effect upon fares." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 388 (1992). The record does not show that the price of PHI's service to injured workers is significantly affected by a reasonableness standard for third-party reimbursement of those services, so the ADA does not preempt that standard.

Regarding the second question, the relief PHI seeks through preemption is an order requiring the insurance company petitioners to reimburse its billed charges fully under Texas law. This request misunderstands the nature and scope of federal preemption of state law.

Courts agree that the ADA does not require States to provide for payment of air ambulance charges. Instead, PHI is trying to use the ADA's preemption clause to have it both ways under state law: PHI relies on Texas law requiring that private insurers reimburse it for air ambulance services to injured workers, yet it argues that the Texas standards governing the amount of that reimbursement are preempted. The Supreme Court of the United States unequivocally rejected this stratagem in *Dan's City Used Cars, Inc. v. Pelkey*, observing that any preemption under a similarly worded federal law would displace the entire state-law regime. 569 U.S. 251, 265 (2013).

2

Thus, PHI would be substantially worse off if it succeeded on its preemption claim, as insurers would no longer have any obligation to reimburse it at all.

Moreover, PHI's attempt to use federal preemption to compel full reimbursement under state law runs headlong into the Tenth Amendment to our Federal Constitution. As the federal anticommandeering doctrine recognizes, Congress lacks the power to change state law. Litigants cannot invoke preemption to avoid this constraint, which is fundamental to the structure of our government.

For these reasons, we hold that the ADA does not preempt Texas's general standard of fair and reasonable reimbursement as applied to air ambulance services, nor does it require that Texas compel private insurers to reimburse the full charges billed for those services. We therefore reverse the judgment of the court of appeals and reinstate the trial court's judgment declaring that Texas law is not preempted.

## I

PHI Air Medical, LLC is one of the country's leading providers of emergency air ambulance services, and it has significant operations in Texas. PHI is licensed to operate as an air carrier by the Federal Aviation Administration and as an air taxi by the United States Department of Transportation. PHI is thus subject to federal oversight, including laws and regulations that address safety and unfair or anti-competitive practices. *See, e.g.*, 49 U.S.C. § 41712(a); 14 C.F.R. pt. 135. But PHI need not obtain a certificate of public convenience and necessity or comply with the associated federal economic regulations. *See* 14 C.F.R. § 298.3(a)–(b) (2005).

Upon the request of first responders or medical professionals, PHI provides its services without regard to a patient's insurance status or ability to pay. *See* 25 Tex. Admin. Code

3

§ 157.36(b)(9)–(10), (14).  In recent years, PHI alleges its costs have risen; simultaneously, it says, payors in the industry—often insurers—have increasingly sought to avoid paying PHI's billed charges in full.  These factors and others,[1] PHI claims, have pressed PHI to raise prices to sustain itself.  The amount that air ambulance providers may recover from workers' compensation insurers forms the basis of this dispute.

## A

In 1913, the Texas Legislature enacted the Texas Workers' Compensation Act (TWCA) to respond "to the needs of workers, who, despite escalating industrial accidents, were increasingly being denied recovery."  *SeaBright Ins. v. Lopez*, 465 S.W.3d 637, 642 (Tex. 2015) (quoting *Kroger Co. v. Keng*, 23 S.W.3d 347, 349 (Tex. 2000)).  In enacting the TWCA, the Legislature balanced two competing interests: providing compensation for injured employees and protecting employers from the costs of litigation.  *Id.*  The Legislature struck a balance between these interests by permitting workers to "recover from subscribing employers without regard to the workers' own negligence" while "limiting the employers' exposure to uncertain, possibly high damages awards permitted under the common law."  *Id.*  The TWCA thus "allows employees to receive 'a lower, but more certain, recovery than would have been possible under the common law.'"  *Id.* (quoting *Kroger Co.*, 23 S.W.3d at 350).  The Legislature revamped the TWCA in 1989 and created the Texas Workers' Compensation Commission—now the Division of Workers' Compensation at the Texas Department of Insurance—to implement and enforce its provisions.  *Tex. Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 646–47 (Tex. 2004) (citing TEX. LAB. CODE § 402.061).

---

[1] PHI cites heavy discounts required for Medicare and Medicaid patients.

Under the TWCA, employers may purchase insurance from private companies to cover workers who are injured on the job. When PHI transports an injured worker covered by such insurance, Title 5 of the Texas Labor Code and its associated regulations apply. *See* LAB. CODE §§ 401.007–419.007. A health care provider that treats injured workers, like PHI, has a direct statutory claim for reimbursement from a workers' compensation insurer, *id.* § 408.027(a), and the provider may contract with the insurer to determine the amount of reimbursement. *Id.* § 413.011(d-4). Absent a contract, the reimbursement amount is governed by fee guidelines promulgated by the Division. *Id.* §§ 413.011, .012. These guidelines establish maximum reimbursement amounts for providers. *Id.* § 408.028; 28 Admin. Code § 134.1(a).

When the Division has not adopted an applicable guideline, the insurer must reimburse the provider for its services up to a "fair and reasonable" amount. LAB. CODE § 413.011(d);[2] 28 Admin. Code § 134.1(a), (e)–(f).[3] If the insurer does not reimburse the full amount of the provider's billed charges, the provider generally may not "balance bill" its customer—the covered worker—directly for the unpaid portion. *See* LAB. CODE § 413.042. A provider dissatisfied with the amount an insurer pays may seek review by the Division. *Id.* § 413.031(a). In turn, a party

---

[2] Section 413.011(d) provides:

> Fee guidelines must be fair and reasonable and designed to ensure the quality of medical care and to achieve effective medical cost control. The guidelines may not provide for payment of a fee in excess of the fee charged for similar treatment of an injured individual of an equivalent standard of living and paid by that individual or by someone acting on that individual's behalf. The commissioner shall consider the increased security of payment afforded by this subtitle in establishing the fee guidelines.

[3] An insurer is not required to reimburse the provider more than the prescribed "maximum allowable rate," defined as "the maximum amount payable to a health care provider [without] a contractual fee arrangement that is consistent with" Labor Code section 413.011 and Division rules. 28 Admin. Code § 134.1(a). If payment is determined under the fair and reasonable standard, that rate is deemed the maximum allowable rate. *See id.* § 134.203(d)(3), (f).

5

who disagrees with the Division's ruling is entitled to a contested case hearing conducted by the State Office of Administrative Hearings and, ultimately, to judicial review. *Id.* § 413.031(k), (k-1).

**B**

Until 2012, when this dispute arose, insurers had been reimbursing PHI for its services at 125% of the Medicare rate for air ambulance services, citing the Division's fee guideline for providers other than hospitals and pharmacies. *See* 28 Admin. Code § 134.203(d)(1). But in 2012, PHI and other air ambulance providers began filing fee disputes with the Division, seeking to recover the full amount of their billed charges. This particular suit represents a fraction of the air ambulance fee disputes pending agency review: it concerns thirty-three transports that PHI provided between 2010 and 2013 to patients covered by workers' compensation insurance. No contract between PHI and the insurers of those thirty-three patients (petitioners here) sets a predetermined reimbursement amount.[4]

Before the Division, PHI argued that the federal ADA preempted the TWCA's fee schedules and reimbursement standards. According to PHI, the effect of ADA preemption was to require that the insurers pay its billed charges in full. The Division agreed. But an administrative law judge (ALJ) disagreed following a contested case hearing, holding that the ADA did not preempt the TWCA and its reimbursement scheme. The ALJ relied on the McCarran-Ferguson Act, a federal statute that saves or "reverse-preempts" state laws regulating the business of insurance. *See* 15 U.S.C. §§ 1011–15. Having held that the McCarran-Ferguson Act rendered

---

[4] PHI has one contract for an agreed-upon price for intrastate transports with the University of Texas Medical Branch at Galveston. According to PHI, this contract covers less than 1% of PHI's annual transports, and the Branch is not a party to this dispute.

6

ADA preemption inoperative, the ALJ concluded that PHI was entitled to reimbursement under the TWCA's standards.

Concerning the amount of reimbursement required, PHI argued that it should receive the full amount of its billed charges and that the amount previously paid by the insurers—125% of the Medicare air ambulance rate—would reflect a loss on each transport. The insurers argued that 125% of the Medicare rate was appropriate under rule 134.203, the Division's fee guideline for providers other than hospitals and pharmacies. *See* 28 Admin. Code § 134.203.[5] Alternatively, the insurers argued that 125% of the Medicare rate was a fair and reasonable fee for PHI's services.

The ALJ agreed with PHI that the Division's fee guidelines do not set reimbursement rates for air ambulances at 125% of Medicare.[6] As the parties had no contractual rate, the ALJ held that a fair and reasonable rate—which he determined to be 149% of the Medicare rate for air ambulances—must be paid. 28 Admin. Code §§ 134.1(e)(3), .203(d)(3), (f); *see also* LAB. CODE § 413.011(d).

After the ALJ rendered a final decision, PHI and the insurers sought judicial review. Each requested a declaratory judgment regarding preemption. The insurers also challenged the

---

[5] The insurers contended that subsection (d)(1) of this rule established 125% of the Medicare rate as the maximum allowable reimbursement for air ambulances because a Medicare fee schedule exists for air ambulances.

[6] Though the parties disputed rule 134.203's applicability to air ambulance providers, the ALJ did not decide whether that rule applied because the fair and reasonable standard would determine reimbursement either way. Assuming arguendo that rule 134.203 did apply, the ALJ concluded that contrary to the insurers' assertions, subsection (d)(1) would not set reimbursement at 125% of the Medicare rate for air ambulance services. Subsection (d)(1) provides that the maximum allowable reimbursement rate for certain services shall be 125% of the fee prescribed in the Medicare Durable Medical Equipment, Prosthetics, Orthotics, and Supplies fee schedule. 28 Admin. Code § 134.203(d)(1). Because air ambulance fees are not addressed in that fee schedule, the ALJ concluded subsection (d)(1) would not apply to PHI. As subsection (d)(2) likewise would not apply because there is no Texas Medicaid fee schedule for air ambulance services, reimbursement would be decided according to the fair and reasonable reimbursement standard per subsection (d)(3). The same result would be true if rule 134.203 did not apply at all: rule 134.1 provides that reimbursement "in the absence of an applicable fee guideline or a negotiated contract" shall be determined by "a fair and reasonable reimbursement amount." 28 Admin. Code § 134.1(e)(3).

7

conclusion that 149% of the Medicare reimbursement rate was fair and reasonable for these transports.  The Division intervened, siding with the insurers in opposing preemption.  All parties moved for summary judgment.

Following a hearing, the trial court denied PHI's motion for summary judgment and granted summary judgment for the Division and the insurers. The court declared that the ADA does not preempt the TWCA's reimbursement provisions and that the insurers did not owe more than 125% of the Medicare amount.  PHI appealed and the court of appeals reversed, holding that the TWCA's reimbursement provisions are preempted by the ADA and are not saved by the McCarran-Ferguson Act.  549 S.W.3d 804, 809, 816 (Tex. App.—Austin 2018).  The Division and the insurers sought our review, and we granted their petitions.

## II

### A

In this Court, the parties again dispute whether the ADA preempts the TWCA's reimbursement provisions and, if so, whether the McCarran-Ferguson Act reverse-preempts those provisions because they regulate the business of insurance.  Because we conclude that the ADA does not preempt the TWCA's reimbursement scheme, we do not decide whether the McCarran-Ferguson Act applies.

Whether the ADA preempts the TWCA's reimbursement guidelines is a question of law we review de novo.  *See Thompson v. Tex. Dep't of Licensing & Regulation*, 455 S.W.3d 569, 571 (Tex. 2014) (per curiam); *Baker v. Farmers Elec. Co-op.*, 34 F.3d 274, 278 (5th Cir. 1994) ("Preemption is a question of law reviewed *de novo*.").  "When both sides move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should

8

review both sides' summary judgment evidence and determine all questions presented." *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000). The reviewing court should render the judgment that the trial court should have rendered. *Id.*

**B**

"Federal preemption of state law follows from the Framers' core commitment to dual sovereignty, which is a defining feature of our Nation's constitutional blueprint." *Air Evac EMS, Inc. v. Cheatham*, 910 F.3d 751, 760 (4th Cir. 2018) (cleaned up). "The Constitution limited but did not abolish the sovereign powers" the States claimed in declaring their independence, leaving them "a residuary and inviolable sovereignty." *Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1475 (2018) (quoting THE FEDERALIST NO. 39, at 245 (Clinton Rossiter ed., 1961)). Our constitutional structure "indirectly restricts the States by granting certain legislative powers to Congress" and including a Supremacy Clause—a "rule of decision" instructing "that when federal and state law conflict, federal law prevails and state law is preempted." *Id.* at 1476, 1479.

When acting within its enumerated powers, "Congress's choices range from complete reliance on state policy to complete preemption of state law, with many iterations of 'cooperative federalism' between these extremes." *Air Evac*, 910 F.3d at 761. Yet congressional power is limited, and "all other legislative power is reserved for the States, as the Tenth Amendment confirms." *Murphy*, 138 S. Ct. at 1476. "[C]onspicuously absent from the list of powers given to Congress is the power to issue direct orders to the governments of the States." *Id.*

The States' retained police powers include the power to provide a compensation system for injured workers, as Texas has done. *See Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504,

9

524 (1981).[7]  In many States, a government entity acts as the employers' insurer, paying benefits to injured workers and reimbursing certain expenses they have incurred.  In Texas, however, employers contract with private insurance carriers to perform these functions, and state laws and regulations define the insurers' obligations to reimburse health care providers for their services to covered workers.  *See* LAB. CODE § 406.051.  Each insurance policy incorporates these laws and regulations, obligating the insurer to pay the benefits they require.

The following Texas laws and regulations are particularly relevant to our analysis of PHI's preemption challenge.  Under the TWCA, as explained above, a health care provider like PHI has a direct claim for reimbursement from an insurer.  *Id.* § 408.027(a).  Because the ALJ determined the Division has no fee guideline for air ambulance services, the insurers are required to reimburse PHI for its services up to a "fair and reasonable" amount.  *See id.* § 413.011(d); 28 Admin. Code §§ 134.1(a), (e)–(f), .203(d)(3), (f).  The insurers reimbursed PHI less than the full amount of its billed charges, and the parties dispute whether the amount the insurers reimbursed is fair and reasonable.  Given the TWCA's prohibition against "balance billing," PHI has not billed its customers—the covered workers—for the remainder.  *See* LAB. CODE § 413.042.

According to PHI, the federal act deregulating the airline industry (the ADA) expressly preempts Texas's laws and regulations requiring insurers to reimburse it a fair and reasonable amount for air ambulance services; therefore, it is entitled to an order compelling the insurers to reimburse its billed charges fully under state law.  The court of appeals erred in agreeing with PHI for two reasons.  As Part III shows, the federal ADA does not preempt the Texas fair and

---

[7] *See also N.Y. Cent. R.R. v. White*, 243 U.S. 188, 206 (1917); *Lykes Bros. S.S. Co. v. Esteves*, 89 F.2d 528, 530 (5th Cir. 1937) ("[T]he state in the exercise of its police power may impose absolute liability upon the employer [for worker injuries] regardless of the existence of actionable negligence.").

10

reasonable standard for reimbursement. Yet even if the ADA had that preemptive effect, it does not—and, as a constitutional matter, could not—provide PHI the remedy it seeks, as we explain in Part IV.

### III

### A

"In 1978, Congress enacted the ADA, which deregulated the airline industry in order to encourage market competition, lower prices, advance innovation and efficiency, and increase the variety and quality of air transportation services." *Sabre Travel Int'l, Ltd. v. Deutsche Lufthansa AG*, 567 S.W.3d 725, 737 (Tex. 2019). "To ensure that the States would not undo federal deregulation with regulation of their own," Congress included an express preemption clause. *Morales*, 504 U.S. at 378. The clause provides that "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1).

The insurers do not challenge the power of Congress to preempt state law on this subject. Rather, the first disputed question is whether this clause preempts the particular Texas laws and regulations PHI challenges here. To answer that question correctly, it is important to be clear about what PHI is challenging and what it is not.

In this Court, PHI only briefs a challenge to Texas's general "fair and reasonable" standard, which defines how much of PHI's charges to its customers the insurers are obligated to reimburse. PHI is not presently challenging Texas's prohibition on PHI balance billing its customer directly.[8]

---

[8] In the trial court, PHI sought a declaration in the alternative that the balance-billing prohibition is preempted. The trial court granted summary judgment against PHI on preemption. On appeal, PHI ultimately told the court of appeals it was challenging the balance-billing prohibition only in the alternative. The court of appeals did not reach that challenge, holding instead that the reimbursement standard is preempted. *See* 549 S.W.3d at 816 ("We limit our

11

In other words, PHI would rather be paid by the insurers than by its customers. This choice is understandable, as insurers are likely more able to pay and balance billing has become a subject of national concern. *See Air Evac*, 910 F.3d at 757. But the choice does have consequences for our preemption analysis, as we explain below.

The preemption inquiry before us is whether the state laws and regulations setting a general fair and reasonable reimbursement standard for third-party insurers are "related to a price . . . of an air carrier." 49 U.S.C. § 41713(b)(1). The ordinary meaning of "related to" is broad, reaching state provisions that have "a connection with or reference to" air carrier prices even if they are not "specifically addressed to the airline industry" or their "effect is only indirect." *Morales*, 504 U.S. at 384, 386, 388. But the reach of this statutory language is not unlimited, and "some state actions may affect airline fares in too tenuous, remote, or peripheral a manner" to be preempted. *Id.* at 390 (cleaned up). For example, the ADA did not deregulate reimbursement for air-related medical care generally,[9] and PHI does not argue that the ADA preempts the maximum fees States have set for reimbursement of air ambulance services rendered to customers covered by the federal Medicaid program.[10]

To help courts determine whether a particular state action falls on the preempted or non-preempted side of this relatedness line, the U.S. Supreme Court has developed the following test: state provisions that "express[ly] reference" air carrier prices and establish "binding requirements"

---

decision to the rules and statutes related to reimbursement rates and explicitly do not address the balance-billing provision, as PHI has explained that it only attacks that provision in the alternative and that it would prefer to leave the balance-billing prohibition intact.").

[9] The ADA did not displace preexisting federal Medicare and Medicaid regulations that set air ambulance reimbursement rates and prohibit balance billing. *See Keefe ex rel. Keefe v. Shalala*, 71 F.3d 1060, 1062–63 (2d Cir. 1995).

[10] *See, e.g.*, 1 Admin. Code §§ 355.101(c), .8600(c)(1).

are preempted. *Id.* at 388. But the ADA preempts state provisions of general applicability only if they "have the forbidden significant effect upon fares." *Id.*

The Supreme Court has reiterated this test and extended it to another similarly worded federal preemption statute. *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 370–71, 375 (2008).[11] And the Fifth Circuit and federal courts nationwide have applied the Supreme Court's test consistently, including in cases like this one involving state rules for reimbursement of air ambulance services. *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 336 (5th Cir. 1995) (en banc) ("Laws of general applicability, even those consistent with federal law, are preempted if they have the 'forbidden significant effect' on rates . . . ."); *see also, e.g.*, *Air Evac*, 910 F.3d at 767; *Bailey v. Rocky Mountain Holdings, LLC*, 889 F.3d 1259, 1271 (11th Cir. 2018); *EagleMed LLC v. Cox*, 868 F.3d 893, 902 (10th Cir. 2017) ("[T]he court only needs to decide whether a particular state law or claim has a 'forbidden significant economic effect on airline rates . . .' when the state law at issue does not 'expressly refer to airline rates . . .' itself."); *Buck v. Am. Airlines, Inc.*, 476 F.3d 29, 34–35 (1st Cir. 2007); *Travel All Over the World, Inc. v. Saudi Arabia*, 73 F.3d 1423, 1433 (7th Cir. 1996).[12]

Here, Texas's fair and reasonable standard for reimbursement is generally applicable: it does not reference air carrier prices. We therefore apply the Supreme Court's settled preemption

---

[11] Our dissenting colleagues suggest that *Rowe* broadens the ADA preemption test to displace any state provisions that relate to an air carrier's price by "indirectly limit[ing] the amount that [it] may charge for its services." *Post* at ___ (Green, J., dissenting). But *Rowe* reaffirms that the ADA does not preempt general state regulation unless it has "a '*significant* impact' on carrier rates, routes, or services." 552 U.S. at 375 (quoting *Morales*, 504 U.S. at 388).

[12] The parties dispute whether the presumption against preemption also comes into play in this express preemption case. We need not reach that dispute because we conclude that the text of the ADA's express preemption clause as construed by the U.S. Supreme Court does not preempt Texas's general fair and reasonable standard for reimbursement.

13

test, asking whether that standard has the forbidden significant effect on PHI's prices. *Morales*, 504 U.S. at 388.

B

On this record, we conclude PHI has not shown that the fair and reasonable standard for third-party reimbursement has a significant effect on its prices for carrying injured customers by air. If we were analyzing the prohibition on PHI billing its customers (unchallenged here), it would be logical to expect that prohibition to have a significant effect on PHI's prices. But it is not at all clear that adopting a reasonableness standard for reimbursement by third parties, standing alone, has a significant effect on the price of PHI's services to its customers. We recently explained in *Sabre Travel* that "[i]ncreasing an airline's cost does not automatically lead to a corresponding increase in airline ticket prices." 567 S.W.3d at 738. The same is true of limiting an air carrier's reimbursement: PHI must come forward with evidence proving that those limits have a significant effect on price to obtain a summary judgment of preemption.

PHI disagrees, arguing that "price" as used in the ADA's preemption clause includes the amount a third party may reimburse it for its services. That blanket rule not only disregards PHI's burden on summary judgment, it distorts the meaning of "price" and would expand the scope of ADA preemption dramatically, leading to absurd results.

In 1994, the Legislature defined "price" in the ADA to mean "a rate, fare, or charge." 49 U.S.C. § 40102(a)(39). As dictionary definitions show, these terms concern *how much* one charges or pays for a good or service.[13] To the extent the terms are concerned with *who* charges or pays a

---

[13] *E.g.*, *Fare*, MERRIAM–WEBSTER, https://www.merriam-webster.com/dictionary/fare (last visited June 22, 2020) ("[T]he price charged to transport a person."); *Price*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("The amount of money or other consideration asked for or given in exchange for something else; the cost at which something is bought or sold."); *Rate*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("An amount paid or charged for a good or

14

price, the parties to the exchange are determined by the transactional relationship.[14]  Here, the parties to the transaction are PHI and the injured customer it transports by air ambulance.

PHI has no transactional relationship with a third-party insurer, which simply receives PHI's bill for services already rendered to an injured customer covered by the policy and determines how much it will reimburse PHI on that customer's behalf.  Again, evidence might show that the reimbursement rate has a significant effect on the price of the air ambulance service, but the reimbursement rate is not itself part of the price PHI charges to transport customers, as PHI contends.

The following example illustrates the results that would follow from PHI's blanket rule. The State Bar of Texas—an administrative agency that is part of our judicial branch[15]—has a policy that it will reimburse speakers at its continuing legal education courses for "airline travel at coach rates," but "such expenses [must] be reasonable according to the usual cost of products or services for which reimbursement is requested as determined by similar reimbursement requests of other participants, by practices applicable to other public agencies and institutions of the State of Texas, by other readily available reference information, and by State Bar staff experience," as well as "location[] and other circumstances."[16]  Thousands of state agencies nationwide likely have similar reasonableness standards for reimbursement of airfares.  Because this standard dictates the

---

service."); *see also Rate*, MERRIAM–WEBSTER, https://www merriam-webster.com/dictionary/rate (last visited June 22, 2020) ("[A] charge, payment, or price fixed according to a ratio, scale, or standard . . . ."); *Price*, OXFORD DICTIONARY OF ENGLISH (2017) ("[T]he amount of money expected, required, or given in payment for something.").

[14] *E.g.*, *Fare*, MERRIAM–WEBSTER, https://www.merriam-webster.com/dictionary/fare (last visited June 22, 2020) ("[T]he price charged to transport a person."); *Price*, AMERICAN HERITAGE DICTIONARY (5th ed. 2020) ("The amount of money or goods, asked for or given in exchange for something else.").

[15] TEX. GOV'T CODE § 81.011(a).

[16] STATE BAR OF TEXAS, BOARD OF DIRECTORS POLICY MANUAL § 7.03.08(A), (B), (C)(4) (Jan. 2020).

amount the State Bar will reimburse for air carrier services, it would be preempted under PHI's approach.[17]

As the Supreme Court's test instructs, we should focus instead on the record of this case to determine whether Texas's fair and reasonable reimbursement standard for workers' compensation insurers has a significant effect on air ambulance prices. PHI does take note of the record, observing that the fair and reasonable reimbursement amounts determined by the trial court and some administrative actors were less than the full amount it billed. This observation misses the mark for both legal and factual reasons.

Legally, the full amount billed for air ambulance services is not the starting point for measuring significant effect. As two federal circuits have explained, the ADA does not guarantee "any payment of air-ambulance claims whatsoever," *EagleMed*, 868 F.3d at 906, much less payment of "whatever an air carrier may demand." *Air Evac*, 910 F.3d at 769. Moreover, the billed amount generally is not the product of a transactional relationship, as PHI's injured customer has not agreed to pay it. *See Ferrell v. Air EVAC EMS, Inc.*, 900 F.3d 602, 608–10 (8th Cir. 2018) (discussing injured customer's argument that he did not assent to price before his transport). Absent an agreement on price, the law implies a fair or reasonable price: exactly the same standard Texas has adopted for determining reimbursement. *See id.* at 608–10 (explaining that result of air ambulance provider's suit against customer who did not agree to pay billed amount would be to recover fair or reasonable value of services provided); *Bendalin v. Delgado*, 406 S.W.2d 897, 900

---

[17] Although the reimbursement goes to the airline customer in the State Bar example rather than directly to the air carrier as here, the economic effect is the same: each standard limits the amount available from a third party to pay for the carrier's services. We also note that, as explained in Part IV, PHI's view of preemption would prevent the State Bar from having any reimbursement policy at all for airline travel.

(Tex. 1966) (discussing rule that when parties fail to specify price, courts presume "that a reasonable price was intended").

Nor do the facts bear out PHI's position that it would recover significantly less for its services under the fair and reasonable reimbursement standard. The Division concluded that the full amount billed by PHI was fair and reasonable. The ALJ disagreed. Finding that the average amount paid to PHI for services in Texas during the relevant period was 149% of the reimbursement amount under federal Medicare regulations, the ALJ held this figure was a fair and reasonable amount for workers' compensation insurers to reimburse PHI for its services to covered employees. The trial court reduced this figure to 125% of Medicare, which was the price that PHI agreed to charge the one customer with which it had a contract. The court of appeals did not reach this issue.

Thus, under the fair and reasonable standard, it is possible that the amount of PHI's reimbursement for carrying covered workers could be either (1) the full amount PHI billed, (2) the average price PHI is paid for air ambulance services, or (3) a price PHI bargained for in the market. These possibilities show that the fair and reasonable standard does not have a significant effect on PHI's prices. Under *Morales*, therefore, the ADA does not preempt that state reimbursement standard.

## C

PHI offers little authority to support its position that a State's general reasonableness standard for workers' compensation reimbursements has a significant effect on air ambulance prices and thus is preempted by the ADA. Although some federal circuits have found preemption of workers' compensation rules regarding air ambulance services in other States, those cases are

different in three key respects: (1) the state rules at issue expressly referenced air ambulance prices, triggering a different part of the *Morales* preemption test; (2) the rules established a maximum fee cap and thus significantly affected air ambulance prices; or (3) the air ambulance service challenged a prohibition on billing its customer directly. The reasoning employed by those courts supports a holding of no preemption here.

For example, PHI relies heavily on the Tenth Circuit's decision in *EagleMed v. Cox*. There, the Wyoming Workers' Compensation Division set a rate schedule under which it reimbursed a maximum amount of "$3,900.66 plus $27.47 per statute mile" for air ambulance services. 868 F.3d at 898. EagleMed challenged this schedule as well as a statutory prohibition on directly "billing the injured employee for the expenses incurred." *Id.* at 900. The court held the ADA preempted these provisions because they "expressly establish a mandatory fixed maximum rate that will be paid by the State for air-ambulance services," and thus there was no need to apply the *Morales* significant-effect standard. *Id.* at 902.

The challenge to direct billing was critical to the court's analysis. It reserved judgment on whether preemption would apply if Wyoming gave air ambulance companies an option to seek reimbursement at scheduled rates or to pursue a claim against its customer directly. *Id.* at 901. And it concluded that if the Wyoming statute were read "to prevent air-ambulance companies from seeking [payment] from the workers themselves," it "would be illegally regulating air-ambulance rates by preventing any recovery from air-ambulance passengers, and the proper remedy would seem to be the preemption of this statute." *Id.* at 906 n.3.

This analysis exposes a critical flaw in PHI's preemption argument. If any part of the Texas workers' compensation reimbursement scheme significantly affects air ambulance prices, it

18

is the prohibition on PHI billing its customer for the price of his or her flight, not reasonableness standards for third-party reimbursement.[18] PHI cannot obtain preemption of the latter by strategically declining to challenge the former in this Court. There are larger principles of federalism at stake here. Whether the Supremacy Clause displaces state law regulating a subject within its reserved powers should be decided by considering the state statutory and regulatory scheme as a whole, not just the particular provision that an individual litigant prefers to challenge.

The Fourth Circuit reached a similar conclusion in *Air Evac EMS, Inc. v. Cheatham* regarding West Virginia's reimbursement scheme. The state adopted a fee schedule of reimbursement rates for air ambulance services, backed up by statutes providing that those rates "are the maximum allowable recovery" and customers "cannot be billed directly." 910 F.3d at 758. The court concluded that these provisions were related to air ambulance prices and thus preempted because they "directly reference air ambulance payments," establish "maximum amounts that the state will pay directly to air-ambulance providers, and limit the ability of those providers to seek recovery from anyone else." *Id.* at 767 (citations omitted).

As in *EagleMed*, however, the *Air Evac* court did not address "whether the fee schedule could be maintained without either the reimbursement caps [fixing a maximum allowable recovery] or [the customer] balance-billing provisions." *Id.* at 769 n.3. That is the situation presented here, as Texas does not have fixed maximum reimbursement limits and PHI is not challenging the balance-billing prohibition. Indeed, the Texas system is even less likely to impact

---

[18] In addition, Texas's fact-driven standard of fair and reasonable reimbursement differs from the fixed maximum fee cap at issue in *Eagle Med*, as we discuss further below.

19

price, as it uses a reasonableness standard—not a fee schedule—to determine reimbursement for air ambulance services.

Finally, the Eleventh Circuit's decision in *Bailey v. Rocky Mountain Holdings* is instructive because it identifies Florida's "balance billing provision" as the "feature" of the state scheme that "has a significant effect on air carrier prices." 889 F.3d at 1270. There, the court upheld an ADA preemption challenge to part of Florida's no-fault auto insurance law regarding air ambulance services. That law allowed the insured to choose one of two methods for determining reimbursement: (1) the insurer would reimburse 80% of reasonable expenses for medically necessary services, and the provider could bill the insured for the remainder of the reasonable fee; or (2) the insurer would reimburse 80% of the fee listed in the Medicare fee schedule, and the provider generally could not balance bill the insured. *Id.* at 1262–63. The insured's policy elected that reimbursement would be paid according to the second method, and the insurer accordingly reimbursed the air ambulance provider an amount less than its reasonable charges. *Id.* at 1263.

The court held this second method had the "forbidden significant effect" on air carrier prices because "the balance billing provision . . . reduces as a matter of law the contract price of [air carrier] services to [insured] patients," limiting the provider to a scheduled maximum fee that was less than a reasonable fee. *Id.* at 1270–71. Texas's fact-driven standard—which requires insurers to pay 100% of fair and reasonable charges—has no such effect, and PHI is not challenging the balance-billing prohibition.

In sum, these cases show that PHI's challenge is misdirected. Each case supports our conclusion that the ADA does not preempt the Texas laws and regulations requiring third-party insurers to reimburse PHI a fair and reasonable amount for services rendered to covered workers.

20

## IV

If the ADA did preempt these reimbursement provisions, PHI contends it is entitled to an order requiring the insurers to reimburse its billed charges fully under state law. The court of appeals appeared to agree with PHI, concluding that "the specific rate-setting provisions at issue" could be severed from the overall Texas reimbursement scheme. 549 S.W.3d at 812 n.10.

We disagree with the court of appeals for two reasons. First, if ADA preemption applies, neither state nor federal law provides for full reimbursement of air carrier bills—or for any reimbursement at all. Second, the effect of federal preemption cannot be that States must provide full reimbursement, as that outcome would violate the Tenth Amendment. For these reasons, the result of ADA preemption here would not be full reimbursement—it would be no reimbursement.

## A

How much of Texas reimbursement law would ADA preemption displace? Under PHI's preemption analysis, the ADA would override all state reimbursement law as applied to air ambulance services. PHI maintains that the amount the insurer will pay for air ambulance services relates to the price of an air carrier, and therefore a reimbursement scheme dictating that amount is preempted. But if a state standard requiring reasonable third-party reimbursement is "related to" air carrier prices, 49 U.S.C. § 41713(b)(1), so is a standard requiring any other amount of reimbursement—including full reimbursement.

A full-reimbursement standard could not be spared preemption on the theory that it is consistent with the federal scheme. "Nothing in the language of § [41713(b)(1)] suggests that its 'relating to' pre-emption is limited to *inconsistent* state regulation." *Morales*, 504 U.S. at 386–87. Rather, the ADA's "pre-emption provision . . . displaces all state laws that fall within its sphere,

even including state laws that are consistent with [the ADA's] substantive requirements." *Id.* at 387; *see also Rowe*, 552 U.S. at 370 ("[I]n respect to pre-emption [under such a provision], it makes no difference whether a state law is 'consistent' or 'inconsistent' with federal regulation."); *Hodges*, 44 F.3d at 336. Given the comprehensive scope of ADA preemption, the court of appeals was incorrect to indicate that portions of the Texas reimbursement scheme could be saved by severance.

Put differently, PHI cannot have it both ways: it cannot rely on state law requiring reimbursement of air carriers while arguing that a particular state standard for measuring that reimbursement is preempted. The U.S. Supreme Court rejected that very argument in *Dan's City Used Cars*. 569 U.S. at 265. There, a towing company relied on New Hampshire law in disposing of a car for nonpayment of towing and storage fees. *Id.* at 255. The car's owner alleged the company did not comply with the law's requirements for disposal and application of proceeds, and he sued for compensation. *Id.* at 258–59. The company contended that a preemption clause similar to the ADA's blocked the owner's claims because they "related to" the "service of a[] motor carrier . . . with respect to the transportation of property." *Id.* at 264–66 (citing 49 U.S.C. § 14501(c)(1)).

The Supreme Court disagreed, explaining that "if such state-law claims are preempted, no law would govern resolution of a [disposal dispute] or afford a remedy for wrongful disposal," as "[f]ederal law does not speak to these issues." *Id.* at 265. The company's preemption position would eliminate not only the owner's remedy but also "the sole legal authorization for a towing company's disposal [of vehicles] that go unclaimed. No such design can be attributed to a rational Congress." *Id.* "In sum," the Court said, the company "cannot have it both ways. It cannot rely

22

on [the state] regulatory framework as authorization for [disposal] of [the owner's] car, yet argue that [the owner's] claims, invoking the same state-law regime, are preempted." *Id.*

Similarly here, if the ADA preempts a state reimbursement scheme dictating the amount an insurer will reimburse, it also preempts the scheme's requirement that insurers provide reimbursement.[19] Nor can PHI rely on federal law to compel reimbursement, as courts agree that "[f]ederal law establishes no duty for states to pay"—or require insurers to pay—"the air-ambulance claims of injured workers who are covered by state workers' compensation statutes." *EagleMed*, 868 F.3d at 906 (noting federal law lacks requirement "to make any payment . . . whatsoever, much less payment at whatever rates [air ambulance carriers] choose to charge"); *accord Air Evac*, 910 F.3d at 769. In particular, the Tenth Circuit held in *EagleMed* that the district court erred in "placing an affirmative duty on state officials to reimburse in full all air-ambulance claims" because "any such possible duty would exist as a creation only of state, not federal, law." 868 F.3d at 906. There is simply no authority for the notion that Congress, in deregulating the airline industry, was regulating the terms of state workers' compensation insurance policies.

In addition, like the company's contention in *Dan's City*, PHI's preemption position would irrationally leave the parties without any governing law or available remedy. As decisions of this Court and the U.S. Supreme Court recognize, federal airline regulators and federal courts are neither authorized nor equipped to take the place of state regulators and courts in handling issues regarding private insurers' reimbursement of air ambulances for their services to covered workers. "When Congress dismantled [the federal airline regulatory] regime, . . . [it] indicated no intention

---

[19] The workers' compensation insurance policies do not independently require reimbursement, as they rely on the state statutory and regulatory requirements PHI claims are preempted to define the insurers' contractual reimbursement obligations.

23

to establish, simultaneously, a new administrative process for DOT adjudication of private contract disputes." *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 232 (1995). "Nor is it plausible that Congress meant to channel into federal courts the business of resolving, pursuant to judicially fashioned federal common law, the range of contract claims relating to airline rates, routes, or services." *Id.*

In sum, the parties "lack . . . any vehicle for resolving" disputes over reimbursement "other than state court lawsuits" decided under state law. *Cont'l Airlines, Inc. v. Kiefer*, 920 S.W.2d 274, 280 (Tex. 1996). If that law is preempted, then there is no requirement for reimbursement at all. The court of appeals' suggestion that limits on reimbursement are severable—allowing PHI to obtain reimbursement of its full billed charges—cannot be reconciled with the scope of ADA preemption as defined by the Supreme Court.

As the insurers point out, requiring full reimbursement could have serious consequences for the Texas workers' compensation system. According to the insurers, almost $50 million in Texas air ambulance charges were already in dispute by January 2019, and PHI's operating profit margin on its full billed charges ranges from 185% to 282%. In Wyoming, which has held that only limits on reimbursement are preempted,[20] the legislature is considering either expanding Medicaid in order to control such charges or making injured workers responsible for the balance of their bills.[21] The ADA was passed to deregulate the airline industry, not to upend the bargain struck in adopting a workers' compensation scheme. As we have explained, there is no reason to interpret the ADA to have that effect.

---

[20] *See Air Methods/Rocky Mtn. Holdings, LLC v. State ex rel. Dep't of Workforce Servs.*, 432 P.2d 476, 485–87 (Wyo. 2018).

[21] *See* Office of Injured Employee Counsel's *Amicus Curiae* Brief in Support of Petitioners at 17–18.

**B**

Finally, PHI cannot be correct that the effect of ADA preemption is to compel full reimbursement under state law, as that is not a permissible result of preemption in our federal system. If the Federal Government does not like state regulation of a subject that also falls within Congress's enumerated powers, the Supremacy Clause allows it to override that regulation with duly enacted laws of its own. *See* U.S. CONST. art. VI, para. 2. But nowhere in the Constitution did the States give the Federal Government the power to order them to change their own laws, as the Tenth Amendment confirms. *See* U.S. CONST. amend. X ("The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.").

"The anticommandeering doctrine . . . represents the recognition of this limit on congressional authority." *Murphy*, 138 S. Ct. at 1476. The doctrine acknowledges that the "Constitution . . . confers upon Congress the power to regulate individuals, not States." *New York v. United States*, 505 U.S. 144, 166 (1992). "Where a federal interest is sufficiently strong to cause Congress to legislate, it must do so directly . . . ." *Id.* at 178. "Congress may not simply commandeer the legislative processes of the States by directly compelling them to enact and enforce a federal regulatory program." *Id.* at 161 (cleaned up). Thus, "even where Congress has the authority under the Constitution to pass laws requiring or prohibiting certain acts, it lacks the power directly to compel the States to require or prohibit those acts." *Id.*

As the anticommandeering doctrine shows, courts deciding preemption challenges may not rewrite preempted state law so that it conforms to federal law. Here, state law requires reasonable reimbursement, and the federal ADA contains no reimbursement requirement. Contrary to PHI's

25

contention, the result of ADA preemption cannot be to grant it full reimbursement under state law. That result would amount to an illegal end run around the constitutional anticommandeering doctrine. Thus, even if PHI's preemption position were otherwise correct, it cannot constitutionally obtain the relief it seeks.

## V

For these reasons, we hold PHI has not shown that Texas's fair and reasonable reimbursement standard for air ambulance services has a significant effect on its prices, and therefore the ADA does not preempt that standard. And even if ADA preemption applied, it would displace the very reimbursement requirement on which PHI relies. We therefore reverse the court of appeals' judgment, reinstate the portion of the trial court's summary judgment declaring no preemption, and remand for the court of appeals to address other issues it did not reach. *See* TEX. R. APP. P. 60.2(c), (d).

_____

J. Brett Busby
Justice

**OPINION DELIVERED:**  June 26, 2020

26